**In re STUART MOTEL, INC., Debtor.**

**Bankruptcy No. 80–00064–BKC–JAG.**

United States Bankruptcy Court,
S. D. Florida.

Dec. 4, 1980.

Samuel S. Sorota, of Steinberg, Sorota & Wohl, Miami Beach, Fla., for the debtor.

Ronald A. Harbert, of Mateer, Harbert, Bechtel & Phalin, Orlando, Fla., for the first mortgagee, Columbia Banking Saving & Loan Association.

Jones, Paine & Foster, West Palm Beach, Fla., for Heath & Co., a creditor.

Daniel Bakst, West Palm Beach, Fla., for Best Western Motel, Inc., a creditor.

Robert J. Gorman, of Brennan, McAliley, Hayskar & McAliley, Fort Pierce, Fla., for K. Wallace Neidenthal, trustee in bankruptcy for General Systems, Inc., a creditor.

Ollie L. Evans, Miami, Fla., for the State of Florida, Department of Commerce Division of Employment Security.

Martha J. Cook, Tallahassee, Fla., for the State of Florida, Dept. of Revenue.

Raymond B. Ray, of Britton, Cohen, Kaufman, Benson & Schartz, Fort Lauderdale, Fla., for Southeast First Nat. Bank, a mortgagee.

Frank C. Walter, Ft. Lauderdale, Fla., for First Bank of Oakland Park, a creditor.

### ORDER DENYING CONFIRMATION OF DEBTOR'S PROPOSED PLAN OF REORGANIZATION AS AMENDED AND OPINION

JOSEPH A. GASSEN, Bankruptcy Judge.

On July 31, 1980, the debtor herein filed its amended plan of reorganization (C.P.No. 56). Thereafter, on September 17, 1980, October 27, 1980 and November 3, 1980 various amendments and modifications to the said amended plan were submitted C.P. Nos.68, 82 and 88 respectively). The last modification of amended plan (C.P.No.88) was filed after the conclusion of the hearing on confirmation held October 30, 1980 which in itself was a continued date from October 14, 1980, the date originally set for hearing on confirmation.

The debtor has paid no principal or interest to the holders of the first and second mortgages on the motel property which is the sole asset of the debtor since February, 1979, and the total amount of all mortgage

---

liens is in excess of $1,800,000 plus accrued interest. 1979 taxes are likewise unpaid and of course 1980 taxes are now due and payable and are not paid. (Tax certificates for 1977 and 1978 are also outstanding, but they would be waived by the holder who is the primary sponsor of the plan if the plan were confirmed.)

The debtor is not in fact operating the motel property and therefore the debtor-in-possession reports filed by the debtor reflect no cash flow whatsoever. Theodore S. Keehn is the sole stockholder of the debtor and is the majority stockholder of an affiliated corporation, Stuart Inn, Inc. which is the operating lessee of the motel property. The debtor is deriving no income therefrom at this time. The other stockholder in Stuart Inn, Inc. is Gerald Schnitzer. Mr. Keehn has purchased the tax certificates for the years prior to 1979 and proposes to assign them to the debtor upon confirmation of the plan. Also Mr. Keehn and Mr. Schnitzer have agreed that the debtor and Stuart Inn, Inc. will be merged upon confirmation of the plan and that thereafter all operating income will be the property of the newly merged surviving corporation.

Mr. Keehn acquired the stock of the debtor corporation in May, 1979. It had theretofore been operated unsuccessfully as a retirement home. Thereafter Mr. Keehn attempted to operate it as a dormitory for a nearby school. This operation was likewise unsuccessful.

The operation returned to its original concept of a commercial motel in a resort-related area (Stuart, Florida) in late 1979 and has continued to operate as such under the lease with Stuart Inn, Inc. to the present time.

Confirmation of the plan as amended depends upon its compliance with the various applicable provisions of 11 U.S.C. 1129. All of the creditors affected by the plan as amended who have filed acceptances or rejections have in fact rejected the plan with the exception of Messrs. Keehn and Schnitzer who of course have accepted it, they being the sponsors.

The initial phase of the plan will not be completely funded for ninety days after confirmation and the effective date is defined in the plan as ninety days after confirmation. Notwithstanding the apparently sincere intentions of Messrs. Keehn and Schnitzer to provide the funds necessary to finance the plan within the time frame set forth in the plan, their ultimate ability to do so is entirely speculative and depends upon their ability to sell other real estate and mortgages receivable not related to the debtor. As a matter of fact, Mr. Keehn was unwilling to give any personal guaranty as to the ultimate funding of the plan.

Much evidence was presented by the debtor to establish that the projected revenue from the motel would produce enough income to service all debt and generate a profit. This evidence was primarily a projection based upon conjecture rather than any concrete history of performance.

Even if the court were to accept as realistic the projected income for 1981 as per debtor's Exhibit No. 1 received in evidence at the confirmation hearing on October 30, 1980, it appears that there will be sufficient cash flow to fund all debt service expense during six months of the year with a deficit built in during the other six months. Even the most altruistic owners might be tempted to recapture as much of their investment as possible from the funds available during the prime six months.

Furthermore the projection (debtor's Exhibit No. 1 from 10–30–80) is predicated upon the highly conjectural and optimistic hope that the best monthly increase ever experienced will continue through each and every month of the coming year. In the court's opinion this puts the creditors at too much risk and does not constitute a basis for a sound and reasonable reorganization. Any unforeseen need or downturn in the economy affecting the debtor's business would undermine the whole operation and assure the failure of the plan of reorganization, bringing this matter back before the court for liquidation or other drastic relief.

The highly speculative nature of the projected income is epitomized by the income predicted for the restaurant and lounge operation. The lease with the lounge operator (debtor's Exhibit No. 3 10–30–80) indicates a security deposit of only $15,000 to be applied as rent at the rate of $3,000 per month. The minimum rent under the lease is $1,000 through December, 1980 and $1,500 per month thereafter. Yet on the projection, the predicted income from that lease is from a minimum of $4,000 per month in September, 1981 to $7,000 per month during the prime winter season. Talco Enterprises, Inc., the operator of the lounge under the lease, has no investment other than its security deposit which will be used up in five months if the minimum rental is exceeded during the prime season about to commence. The previous experience with the restaurant and lounge does not justify this optimism. No evidence was presented as to the previous experience of the operators of Talco or of other similar lounge and restaurant operations in the immediate area. The debtor did not see fit to call any officer or employee of Talco to testify at the confirmation hearing.

Furthermore the court is concerned that holding the secured creditors off for another ninety days amounts to substantial impairment when there is no guarantee that they will be brought current and made whole at the end of that ninety day period. It would be unconscionable to permit the debtor to continue to operate the motel business during the prime winter season and then learn that the plan could not be funded and the creditors put in a severely impaired position at the end of that time.

There has been no showing of the financial condition of Stuart Inn, Inc. The sponsors of the plan have not disclosed the amount nor source of payment of the indebtedness of Stuart Inn, Inc., payment of which they represent will be made prior to merger. The creditors might be better served by cancellation of the lease with Stuart Inn, Inc. rather than a merger with Stuart Inn, Inc.

Based upon all of the evidence before it, the court has serious doubts that the plan of reorganization has provided adequate means for its execution as required by 11 U.S.C. 1123(a)(5).

Even without reaching conclusions as to the impairment of the creditors under the proposed plan of reorganization, the court has great reservation concerning compliance with 11 U.S.C. 1129(a)(11) in that it is impossible to conclude at this time that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor or its successor under the plan. It is, therefore

ORDERED that confirmation of the debtor's proposed plan of reorganization as amended is denied.