**In re GREAT NORTHERN PROTEC-TIVE SERVICES, INC., Debtor.**

**Bankruptcy No. 81–01035.**

United States Bankruptcy Court, W. D. Washington.

April 19, 1982.

Ronald R. Piper, Bellevue, Wash., for debtor.

## OPINION ON CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION

SAMUEL J. STEINER, Bankruptcy Judge.

### FACTS

The debtor, which provides protective and security services, filed this Chapter 11 on

April 5, 1981. The schedules show debts of $66,452 of which $48,646 represent delinquent taxes. The schedules also show assets of $3,400. The plan proposes that creditors receive a hundred cents on the dollar over a six-year period. The funds will come from future earnings at the rate of $1,300 per month.

At the time of filing, the debtor was insolvent, having a negative net worth of about $63,000. If the plan is confirmed, the debtor's immediate situation will be the same. Accordingly, at the hearing on confirmation, the Court raised the issue as to whether the plan is feasible as contemplated by Section 1129(a)(11) of the Code.

Since filing the debtor has filed monthly statements showing gross income and expenses. The statements show:

April of 1981, a positive cash flow of $3,774;

May of 1981, a positive cash flow of $2,000;

June of 1981, a positive cash flow of $1,635;

July of 1981, a negative cash flow of $380;

August of 1981, a positive cash flow of $662;

September of 1981, a negative cash flow of $7,160, after having set aside the $1,300 confirmation payment;

October of 1981, a positive cash flow of $865;

November of 1981, a negative cash flow of $3,200;

December of 1981, a positive cash flow of $5,624, after having set aside the confirmation payment;

January of 1982, a negative cash flow of $3,331;

February of 1982, a positive cash flow of $4,624, after having set aside the $1,300 confirmation payment.

## ISSUE

Under the debtor's circumstances, does the plan meet the feasibility test of Section 1129(a)(11)?

## OPINION

11 U.S.C. § 1129(a)(11) requires the court to find that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." Collier notes that this section is derived from the feasibility tests required by the Act, i.e., Sections 221(2) applicable to Chapter X, 366(2) applicable to Chapter XI and 472(2) applicable to Chapter XII. Collier on Bankruptcy ¶ 1129.02(11) (15th ed. 1981). The 14th Edition of Collier is then cited:

> Basically, feasibility involves the question of the *emergence of the reorganized debtor in a solvent condition* and with reasonable prospects of financial stability and success. It is not necessary that success be guaranteed, but only that the plan present a workable scheme of reorganization and operation from which there may be a reasonable expectation of success. (emphasis added). 6A Collier on Bankruptcy ¶ 11.07 at 234 (14th ed. 1978).

■ The purpose of a feasibility condition is to "prevent confirmation of visionary schemes which promise creditors ... more under a proposed plan than the debtor can possibly attain after confirmation." 5 Collier on Bankruptcy ¶ 1129.02(11) at 1129–34 (15th ed. 1981). The pertinent factors in determining feasibility include: The business' earning power, the sufficiency of the capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the company. *Id.* at 1129–34–34. Thus,

> [n]either the Code nor its predecessor statutes were intended to prolong a hopeless situation and to postpone inevitable liquidation. If the facts indicate that the plan cannot be performed, it is not feasible and cannot be confirmed, notwithstanding the proponent's sincerity, honesty, and willingness to make a best effort attempt to perform according to the terms of the plan. *Id.* at 1129–35.

In *In re Van Doren*, 79 F.2d 859, 862 (7th Cir. 1935), *cert. denied*, 298 U.S. 659, 56 S.Ct. 681, 80 L.Ed. 1385 (1936), the court stated that "section 74 [was not intended

to] afford relief ... to those debtors so hopelessly insolvent as to hold no reasonable expectation of ability to pay in the reasonably near future." The main concern is that the plan not devise "a structure which cannot maintain itself in the business world and which would soon be thrown into reorganization again." 6A Collier on Bankruptcy ¶ 11.07 at 235–36 (14 ed. 1977).

Counsel for the debtor correctly points out that if the plan is confirmed, and if consummation proceeds, the creditors will receive payment in full; and on the other hand, if the case is dismissed or converted, creditors will receive little if anything. Counsel therefore argues that the plan is obviously in the best interests of creditors; and that as to feasibility, an income or earning power approach, rather than a stark comparison of assets to liabilities, should be used in evaluating a "service type" business.

This Court concludes that application of either approach, assuming there are two approaches, yields the same result, that is the debtor's plan is not feasible and confirmation is likely to be followed by a liquidation. Applying first the "income" approach to the viability of the proposed plan, it is evident that if the plan is confirmed, the debtor would have to net $14,300 in the first eleven months following confirmation to meet the $1,300 a month payment requirement. However, the debtor had a positive cash flow of only $9,300 (including three $1,300 payments) in the first eleven months of operation since the Chapter 11 filing. There is nothing in the debtor's history to support or expect that the requisite sums can be realized. The financial information at hand is to the contrary.

A comparison of the debtor's assets to liabilities also compels the conclusion that the proposed plan is not viable. The debtor was hopelessly insolvent when it filed its bankruptcy petition; and if the plan is confirmed, it will come out of Chapter 11 in exactly the same if not a worse condition. As a matter of fact, at this time, there are not sufficient funds on hand to pay the expenses of administration and the post filing debt.

Although the debtor's plan to pay its taxes may be laudable and of benefit to its creditors and principals, it is unlikely that the proposed payments can be made as contemplated.

The Court's ruling is not intended to establish a precedent to the effect that all non-liquidating plans will never be confirmed if on confirmation the debtor's liabilities exceed its assets. However, under the circumstances of this case, it is clear that the proposed plan is the "visionary scheme" that has little chance of success.

Confirmation will be denied.