HEANEY, Circuit Judge.
Ivan Eugene Clarkson and Gail Anita Mansfield Clarkson appeal from a final order of the district court affirming decisions by the bankruptcy judge and the United States Magistrate dismissing the Clark-sons’ petition for reorganization under Chapter 11 of the bankruptcy code. For reversal, the Clarksons specify numerous allegations of error which we discuss in turn, affirming the judgment of the district court.
I. BACKGROUND.
The Clarksons, who farm in eastern Missouri, filed their Chapter 11 petition in October, 1982, and their statement of financial affairs and schedules of liabilities and property followed within three months, listing total debts of $616,353.71 and total assets of $765,439.68. The Clarksons’ disclosure statement was approved in September, 1983, and the reorganization plan’s confirmation hearing was conducted on October 20, 1983.
The Clarksons’ plan proposes to pay one hundred percent of all claims, which it divides into thirteen classes. Monies to pay the creditors would apparently be derived from the Clarksons’ farming, bulldozing, and other activities. The plan contemplates payment of all administrative costs on confirmation of the plan, followed by payments to other impaired classes, including Bragg Brown AgriQuipment and International Harvester. The Clarksons have labeled Class 10 — the claim of the Farmers Home Administration — as both impaired and unimpaired;[1] the plan represents that annual payments of $23,341 would be made at the beginning of each year, followed by payments on the arrearage to FmHA ($48,-000) calculated according to a formula based on an annual fund of $75,000, less amounts paid to higher priority creditors and amounts paid in income and social security taxes. After paying the FmHA arrearages, the Clarksons would make payments to the Small Business Administration, the Bank of Kirksville, Cooke Sales and Service Co. (Cooke), John Deere Co. (Deere), and other creditors, calculated according to the same formula.
Although four classes of creditors accepted the plan, six classes (all impaired creditors) rejected the plan. In addition, Cooke filed objections to the confirmation, *419 arguing that the plan was infeasible and did not treat creditors fairly and equitably.
The bankruptcy judge declined to confirm the plan on the grounds that the plan did not adequately demonstrate the Clark-sons’ sources of revenue or the validity of their income projections, that the plan was not feasible, and that confirmation would likely be followed by a need for further reorganization or liquidation.
The denial of confirmation was appealed to the United States Magistrate[2] who prepared a report and recommendation for the district court, urging affirmance of the bankruptcy judge’s decision. The district court accepted the magistrate’s recommendations and the Clarksons appealed to this Court.
II. DISCUSSION.
Initially, we observe that we review the findings of the bankruptcy court on a clearly erroneous standard. See Bankruptcy Rule 8013. The Clarksons complain that the bankruptcy court made no factual findings; we reject this suggestion. Although he did not enunciate his factual findings as such, his opinion was based upon explicit determinations which we review only for clear error.
A. Fair and Equitable Treatment of the Creditors.
In considering a reorganization plan for confirmation, the district court reviews the plan to ascertain whether the plan is “fair and equitable”[3] to the petitioner’s creditors. In the Clarksons' reply brief, they elect the first option, which obliges them to assure that the claimholders retain the lien securing their claims to the extent of the allowed amount of such claims. Based on the record before us, we cannot say that the bankruptcy court erred in declining to confirm this plan on the ground that “the record provides no acceptable support for the proposition that the debtors’ future operations will fund the proposed plan.” Although the plan is a well-conceived effort to overcome the vagaries of the farm economy, we agree that its funding is uncertain and cannot assure that the plan conforms to the “fair and equitable” requirement of section 1129(b).
B. The Plan’s Infeasibility or the Likelihood of a Subsequent Reorganization or Liquidation.
The bankruptcy court also found that the plan was infeasible and that it would likely be followed by a subsequent reorganization or liquidation. We are obliged to agree with this conclusion.
Although the Clarksons have represented at each step in this proceeding that since January, 1984, they have been ready to tender their first $75,000 payment under the plan, the bankruptcy court found the plan infeasible (despite the Clarksons’ remarkable industriousness) because the income projections did not carry the plan past *420 its inception.[4] The Clarksons’ failure to file operation reports or audit reports makes informed expectations about the plan’s success virtually impossible. The fact that the Clarksons have not prepared or filed their income tax returns for over five years suggests another important gap in the record on which the plan might be evaluated.
Although we sympathize with the Clarksons, we find that the feasibility test is firmly rooted in predictions based on objective fact. The Second Circuit has declared that the feasibility test contemplates “the probability of actual performance of the provisions of the plan. Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.” In Re: Bergman, 585 F.2d 1171, 1179 (2d Cir.1978) (quoting 9 Collier on Bankruptcy, at 1139). Pertinent factors to be considered include the business’s earning power, the sufficiency of the capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the company. In Re: Great Northern Protective Services, Inc., 19 B.R. 802, 803 (Bankr.W.D.Wash.1982). With these standards in mind, we conclude that the bankruptcy court properly relied on the absence of certain managerial and income data from the Clarksons’ plan in declining to confirm the plan.
C. Continuing Loss to and Diminution of the Estate and Absence of a Reasonable Likelihood of Rehabilitation.
Under 11 U.S.C. § 1112(b), the court “may * * * dismiss a case under this chapter * * * for cause, including (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation.” As we have noted, the absence of financial data and certain sources of income for the Clarksons indicates the absence of a reasonable likelihood of rehabilitation. In addition, the positions of the creditors have continued to erode as the life of the debt has been lengthened without any appreciable increase in the likelihood of its satisfaction. Thus, we cannot say that the district court clearly erred in affirming the bankruptcy court’s findings on this subject.
We have carefully reviewed the other allegations of error raised by the Clarksons and find them either to be dealt with by our discussion of the issues or to be merit-less.
Accordingly, we affirm the judgment of the district court.

. The bankruptcy judge rejected the argument that FmHA is not impaired; it made this finding because the arrearage would not have been cured under the plan until January 1, 1985, which posed an unreasonable delay in violation of 11 U.S.C. § 1124.

. We note that the jurisdictional statute in effect at the time of these proceedings, 28 U.S.C. § 1334(c), forbade assignment to the magistrate: "A district court may not refer an appeal * * * to a magistrate or to a special master.” Although it does not alter the outcome of this case, we stress that this type of appeal was not a proper matter for the magistrate. In this case, reference to the magistrate not only violated the statute but delayed resolution of the case.

. Under 11 U.S.C. § 1129(b)(2), the requirement for fairness and equitability is satisfied if,
(A) With respect to a class of secured claims, the plan provides—
(i)(I) that the holders of such claims retain the lien securing such claims, whether the property subject to such lien is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder’s interest in the estate's interest in such property;
(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the lien securing such claims, free and clear of such lien, with such lien to attach to the proceeds of such sale, and the treatment of such lien on proceeds under clause (i) or (iii) of this subparagraph; or
(iii) for the realization by such holders of the indubitable equivalent of such claims.

. We also note that, although the Clarksons have repeatedly represented that the $75,000 was available, nothing in the record suggests that they actually tendered the money to the bankruptcy court or to the creditors. See Appendix p. 132 ("We're going to lay on the Court's table in January * * * $75,000.’’).