**In re Don Byron REILLY, Mary Lou Reilly, Debtors.**

**Bankruptcy No. 286–00004.**

United States Bankruptcy Court, D. Montana.

March 9, 1987.

William L. Needler & Assoc., Ltd., Chicago, Ill., Patrick F. Flaherty, Great Falls, Mont., for debtors.

Lawrence D. Johnson, Hamilton, Mont., for Citizens State Bank.

Howard C. Greenwood, Hamilton, Mont., for Quentin and Nettie Mae Brown.

W. Arthur Graham, Missoula, Mont., for FLB.

Randy J. Cox, Missoula, Mont., for First Interstate Bank.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 proceeding, hearing was held on objection of secured creditors to the Debtors' Amended Disclosure Statement. Certain objections were confessed by the Debtors as being based on inaccurate or incomplete data, and after hearing, the Debtors filed a Second Amended Disclosure Statement which corrected the admitted errors. Nevertheless, the Second Amended Disclosure Statement is still attacked by the secured creditors on material matters of the Debtors' valuations, business operation, including leases of real property, effect of relief from the automatic stay granted Federal Land Bank of Spokane, and the nature of the Debtors' legal interest in the real property.

The Debtors were formerly engaged in raising and selling livestock, but discontinued that business in 1983. The income of the Debtors is derived from four principal

sources, namely, Social Security income, salary of the wife, rent of a trailer, and pasture lease. As a means for execution of the Plan of Reorganization, the Debtors propose to recommence as farmers and "to continue raising sheep, hay and other livestock as they have in the past". The Debtors own two contiguous tracts in Ravalli County, one of 150 acres being purchased under a Contract For Deed from Browns and the other a ten acre tract mortgaged to the Federal Land Bank, which was granted relief from the automatic stay on August 8, 1986, and which order is now pending on Appeal. The Disclosure Statement lists the value of the 150 acre tract at $35,000.00 and the ten acre tract is valued at $25,-000.00. The Disclosure Statement notes that the valuation on the assets is the Debtors' best estimate of liquidation values, and "In lieu of an actual sale of the real estate, it is unknown what the actual value of the real estate will be". Exhibits attached to the Disclosure Statement setting forth the amounts due secured creditors can be summarized as follows:

| Creditor | Amount of Claim | Secured | Unsecured |
|---|---|---|---|
| Federal Land Bank | $52,830.54 | $25,000.00 | $27,830.54 |
| Quentin and Nettie Brown | 91,339.78 | 35,000.00 | 56,339.78 |
| Citizens State Bank | 99,736.28 | None | 99,736.28 |
| First National Bank | 4,700.00 | 3,000.00 | 1,700.00 |

Federal Land Bank, Browns and First Citizens Bank hold mortgages and title to the real property. On the 10 acre tract, Federal Land Bank is first lienholder and Citizens Bank is second mortgage holder. On the 150 acre tract, Browns have first lien rights, and Citizens Bank has a second mortgage and a claimed one-half interest in the property which was deeded to the Bank on April 5, 1985, by the Debtor Mary Lou Reilly. The Debtor claims such transfer was in the nature of a security interest and since there is no equity in the land, such interest is noted as having no value.

At the disclosure hearing, the Browns and Citizens State Bank contested the value placed on the real property and submitted evidence of valuation from a real estate appraiser and Quentin Brown. In the Debtors' response to the objections, they say the valuation and appraisals are not relevant in a hearing for approval of a disclosure statement under 11 U.S.C. § 1125(b). To the secured creditors and the Debtors, value becomes important because the Plan proposes to restructure the secured portion of each claim, payable under a 25 year amortization at 9½%, with a balloon payment at 10 years. The unsecured portion of each claim is proposed to be paid in an amount of 5% of the claim in five equal installments. As an example, the Browns debt of $91,339.70 would be restructured to be paid at $3,708.50 per year on the secured portion and $563.40 on the unsecured claim. Federal Land Bank is proposed to be paid in 25 annual installments on the secured claim at $2,648.00 per annum, and 5% on the unsecured claim, at $278.31 per year. Citizens Bank would receive an annual installment of $216.44 per year for five years. The balance of each unsecured claim would then be discharged. To understand the impact of valuation on each claim, Browns and the Bank produced evidence that the 150 acre tract is worth $166,000.00, rather than $35,000.00, so that the entire claim of Browns and the Bank would be secured.

Section 1125(b) states:

"An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest, with respect to such claim or interest, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and hearing, by the court and containing adequate information. The court may approve a disclosure statement without a

valuation of the debtor or an approval of the debtor's assets."

Adequate information is defined in § 1125(a)(1) to mean "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan". In the legislative history on Section 1125, the House Report states the disclosure hearing will be one of, if not the major, procedural hearing in a reorganization case, and one of the purposes of the hearing will be to permit a valuation in cases where only a valuation will provide adequate information. That history notes a valuation in some cases may be too costly or time consuming and thus the Court in its discretion may approve a disclosure statement without a valuation of the debtor's assets. House Report No. 95–595, P. 227, 95th Cong. 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. One commentator has written that a full going-concern valuation may well be necessary, and therefore heard, at the time of the hearing on the adequacy of the disclosure statement where the plan itself will make that valuation necessary for confirmation, such as in a cram-down case under Section 1129(b). Trost, *Business Reorganizations Under Chapter 11 of the New Bankruptcy Code*, 34 Business Lawyer 1309 (April 1979).

Case law has also developed on the matter. *In re Metrocraft Pub. Service Inc.*, 39 B.R. 567, 568 (Bankr.N.D.Ga.1984) states:

"Case law under § 1125 of the Bankruptcy Code has produced a list of factors disclosure of which may be mandatory, under the facts and circumstances of a particular case, to meet the statutory requirement of adequate information. Disclosure of all factors is not necessary in every case. Conversely, the list is not exhaustive, and a case may arise in which disclosure of all these enumerated factors is still not sufficient to provide

adequate information for the creditors to evaluate the plan.

\* \* \* \* \* \*

Relevant factors for evaluating the adequacy of a disclosure statement may include: (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the Debtor; and (19) the relationship of the debtor with affiliates."

*In re Fierman*, 21 B.R. 314, 315 (Bankr.E. D.Pa.1982), holds:

"The disclosure statement, furthermore, places a value of $450,000.00 on the property. The Court has previously ruled that:

'The proposal must set forth a factual basis for the purported value of the real property. Such information is essential for a party weighing the credibility and merits of the plan. It is likewise necessary for the location, size and nature of this property to be more fully described. *In Re East Redley Corporation*, 16 B.R. 429 (Bankr. E.D.Pa.1982) at p. 430.'"

Thus, the disclosure statement, settled on a case-by-case basis, must contain factual support of the opinions contained in the disclosure statement.

In valuing collateral of a secured creditor, 11 U.S.C. § 506(a) reads in pertinent part:

"Such value shall be determined in light of the purposes of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

Bankruptcy Rule 3010 states the Court "may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing * * *". In confirming a plan of reorganization, there are two valuations required under § 1129(a) and one under § 1129(b). First, there is a valuation of each secured creditor's collateral. Second, there is a valuation required for confirmation where all classes are either unimpaired or vote to accept, but there are dissenting members within a class. Here the values which would result from a Chapter 7 liquidation must be determined to apply the "best-interest-of-creditors" test under § 1129(a)(7). Third, under cram-down in 1129(b), a going concern value is required. See *In re Martin*, 66 B.R. 921, 927 (Bankr.Mont.1986). Valuation, therefore, becomes important in any Chapter 11 case, and, contrary to the notion of the Debtors, it is not irrelevant to a disclosure statement.

The apparent problem facing the Court in the present case is the lack of adequate factual basis on valuation. Based on the hearing evidence, I fix the value of the 150 acre tract being sold by Browns to the Debtors in the sum of $166,000.00. I find the 10 acre tract is not involved in the reorganization since the Federal Land Bank is presently foreclosing on that tract under state law. Thus, the disclosure statement is inaccurate in these areas. Further, the question of the Debtors' legal interest in the 150 acre tract by reason of the conveyance of the one-half interest to Citizens State Bank cannot be settled by confirmation of a Plan of Reorganization.

An adversary proceeding under Bankruptcy Rule 7001 must be filed to determine the validity, priority or extent of a lien or other interest in the property. It is not the purpose of a Chapter 11 Plan to be used as a litigating tactic. *In re Block K Associates*, 55 B.R. 630, 634 (Bankr.Colo.1985); *In re Wally Findlay Galleries (New York) Inc.*, 36 B.R. 849 (Bankr.S.D.N.Y.1984).

IT IS ORDERED the debtors' Second Amended Disclosure Statement is denied approval, with leave of the Debtors to file an Amended Statement in accordance with this Order within fifteen (15) days or this cause will be dismissed.