**In re HOBBLE–DIAMOND CATTLE COMPANY, Debtor.**

**Bankruptcy No. 87–40104.**

United States Bankruptcy Court,
D. Montana.

Aug. 30, 1988.

Stephen C. Mackey, Billings, Mont., for debtor.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

After due notice, a hearing was held June 2, 1988, on confirmation of the Debtor's Chapter 11 Plan of Reorganization, together with objections to the Plan filed by Harriet Flaccus, Louise Grout, David Line, Robert Line, Jr., Penelope Wilson, Norwest Leasing, Inc., Norwest Bank of Billings, Sperry New–Holland Credit, John Deere Co., and John and Michael Robertson. The Plan, as filed, is basically a liquidating Plan, with some of the income to be generated from the sale of the Debtor's cattle. The Plan implementation is to operate the Debtor's two ranches until enough assets can be sold to satisfy all of the claims against the estate.

Ballots filed on the Debtor Plan of Reorganization are as follows:

| Creditor | Class | Amount | Ballot |
|---|---|---|---|
| Mt. State Comp. Ins. Fund | I | $ 1,329.59 | Accepts |
| Treasurer–Sweet Grass Co. | I | 35,694.35 | Accepts |
| J. & N. Andersen | II | 133,144.11 | Accepts |
| Flaccus/Line Group | III | 848,604.01 | Rejects |
| Farm Credit System | IV | 345,598.46 | Rejects |
| Penelope P. Wilson | V | 61,920.98 | Rejects |
| M. Robertson | VI | 143,203.94 | Rejects |
| J. Robertson | VI | 163,910.84 | Rejects |
| C. & E. Pierce | VII | 5,496.86 | Accepts |
| Norwest Bank of Billings | VII | 551,830.00 | Rejects |
| Sperry New Holland | IX | 20,750.00 | Rejects |
| John Deere | X | 18,940.16 | Rejects |
| Norwest Leasing, Inc. | XI | 548,816.01 | Rejects |
| ConAgra, Inc. | XII | 34,878.43 | Rejects |
| Montana Power | XIII | 13,564.34 | Accepts |
| Oie Motor Co. | XIII | 6,279.12 | Accepts |
| Blain Lininger | XIII | 1,168.62 | Accepts |
| Pacific Hide & Fur | XIII | 1,050.87 | Accepts |
| FBS Insurance | XIII | 5,894.61 | Accepts |
| W.R. Grace & Co. | XIII | 4,606.17 | Accepts |
| Loyd Kimble | XIV | 1,145,148.72 | Accepts |
| Kimble Properties | XIV | 667,919.13 | Accepts |

All classes of creditors are impaired under the Plan in that their legal rights are modified by the Plan. *In re Acequia*, 787 F.2d 1352 (9th Cir.1986). Even without the ballots of Loyd Kimble and Kimble Properties, the Debtor's Plan has been accepted by at least one class of impaired creditors and the requirement of 11 U.S.C. § 1129(a)(10) has been met in this case. *See, In re Douglas Hereford Ranch Co., et al.*, 76 B.R. 781, 4 Mont.B.R. 162 (Bankr.Mont. 1987).

Although each creditor's objection to confirmation of the Debtor's Plan is unique, three basic objections are raised by all of the creditors. They are:

(1) That the Plan is not feasible;

(2) That undersecured parties have not been allowed to vote on the unsecured portion of their debt; and

(3) That the "absolute priority rule" has not been met under the Plan.

The Court notes at the outset that the Debtor has not defined any specific term for full implementation of its Plan. Under definitions the Debtor lists the "Term of the Plan" as:

*"Term of the Plan* shall mean such period of time from and after the Confirmation Date during which Debtor shall be allowed to continue operation until sale of all or so many of its assets as are necessary to effectuate the plan ..."

Accordingly, there is no set time period under the Plan by which the Debtor must liquidate its ranches. While 11 U.S.C. § 1123(b)(4) specifically provides for the sale of all or substantially all of the assets of the Debtor, it does not grant the Debtor a time uncertain to accomplish the sale. *In re Nite Lite Inns*, 17 B.R. 367 (Bankr.S.D. Cal.1982). The Debtor's Plan and testimony state that the Debtor's cattle operation will be run on the ranches until the ranches are sold. There is no reference in the Plan to the herd being liquidated. This Court cannot confirm a liquidating Chapter 11 Plan of Reorganization that does not in fact implement liquidation of "all or substantially all" of the assets.

In this case, John Marsh, a professor of Agricultural Economics at Montana State University, and the Debtor's witness, Mr. Bill Rehm, testified that the Debtor's Gelbvich cattle and mixed breed cattle

could all be easily liquidated by the end of 1988. Mr. Marsh further testified that the price currently being paid for cattle is at a nine year high. This testimony went unrefuted. However, the Debtor testified that his cattle were best marketed at certain sales in both the spring and fall of the year. Accordingly, this Court finds that the Debtor's Plan should address liquidating its cattle herd by June 1, 1989.

The Debtor testified that he felt that the sale of his two ranches would lead to payment in full of all his creditors. The Debtor has a sales price on his two ranches of $2,300,000.00 and $520,000.00, respectively. However, the Debtor's appraiser values the property at $1,380,000.00 and $460,000.00, respectively, for a total value of $1,840,-000.00.[1] The Debtor also has a cattle herd worth over $800,000.00. Therefore, if the Debtor were to liquidate its property at the appraisal values, and its cattle herd, it would have in excess of $2,640,000.00 to distribute to its creditors. Creditors, not including Loyd Kimble or Kimble Properties, have filed claims against the bankruptcy estate which total in excess of $2,531,-000.00. Interest and attorney's fees on oversecured claims are continuing to accrue daily and are quickly deteriorating the $110,000.00 equity cushion held by Norwest Bank. The Debtor's president testified during rebuttal that ranches the size of these two could generally be sold in a time period of between two and three years. The president further testified that both ranches had been for sale and on the market since the Debtor's petition was filed. Accordingly, this Court finds that the Debtor's Plan must be for a term of not more than three years, from the date the Petition for Relief was filed, and the cattle herd should be liquidated by June 1, 1989. This Court further sets the value of the Debtor's two ranches at $1,590,000.00 ($1,840,-000.00 less $250,000.00 for the sprinkler system).

■ All objecting parties have stated that the Debtor's Plan of Reorganization is not feasible. The president of the Debtor testified that this operation had operated at a loss pre-petition and at a loss post-petition. However, he felt that in the future the operation would show enough profit to fund the Plan until enough assets were sold to satisfy creditors. All of the Debtor's projections for income are speculative and visionary, and are not based on the Debtor's past or present performances. Where a Chapter 11 Plan contemplates funding the Plan payments from operating revenues, its past and present financial records are probative of feasibility. *In re Merrimack Valley Oil Company, Inc.*, 32 B.R. 485, 488 (Bankr.Mass.1983); *In re Northern Protective Services, Inc.*, 19 B.R. 802 (Bankr.W.D.Wash.1982). Speculative, conjectural, or unrealistic predictions cannot be used to predict financial progress. *Merrimack*, supra at 488, *In re Stuart Motel, Inc.*, 8 B.R. 48 (Bankr.S.D.Fla.1980). Factual support must be shown for the Debtor's projections. *In re Reilly*, 71 B.R. 132, 4 Mont. B.R. 150, 155 (Bankr.Mont. 1987). In this case, the Debtor has not shown any historical performances which can attest to the future predictions. For example, even with the loss of the sprinkler system for the Debtor's hay production the Debtor does not feel that the production will be too drastically reduced. This Court finds that the Debtor's Plan of Reorganization without specifying a time for liquidation is speculative and visionary and, accordingly, not feasible. Therefore, the creditors' objections to the Plan's feasibility are sustained.

■ Several undersecured creditors further object to the Plan because they were not afforded a chance to vote on the unsecured amount of their claim. If the creditors' unsecured amount is treated in Class XIII of the Plan, then the creditor should have a vote under Class XIII. Accordingly, these objections are sustained.

The next objection of the creditors is that the Plan violates the "absolute priority rule", 11 U.S.C. § 1129(b). See *Norwest Bank Worthington v. Ahlers*, —— U.S. ——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

---

1. This value included a sprinkler system on the Greycliff ranch which this Court has ordered removed. The sprinkler system was valued at $250,000.00 in the same land appraisal.

It is not necessary to rule on such objection in light of the fact that liquidation of the assets is proposed. That liquidation will provide the funds to pay the claims against the estate, and if all claims are paid in full from the proceeds of liquidation, any remaining funds are proper assets of the Debtor.

IT IS ORDERED:

(1) That the Debtor's Chapter 11 Plan of Reorganization is denied confirmation;

(2) That the Debtor shall have 15 days to file an Amended Plan of Reorganization which conforms with this Order.