**In re METROCRAFT PUBLISHING SERVICES, INC., Debtor.**

**Bankruptcy No. 83–04811A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

May 14, 1984.

Anthony DeMarlo, McCurdy & Candler, Decatur, Ga., and Richard B. Herzog, Jr., Bisbee, Parker & Rickertsen, Atlanta, Ga., for debtor.

Paul W. Bonapfel, Cotton, White & Palmer, P.A., Atlanta, Ga., for the Creditors' Committee.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the application by the above-named debtor for approval of its disclosure statement in accordance with § 1125 of the Bankruptcy Code. An objection to the disclosure statement was filed by the Creditors' Committee ("Committee"). Following a hearing on May 1, 1984, this matter was taken under advisement. As set forth below, the disclosure statement contains a number of deficiencies which must be corrected before the Court will approve the disclosure statement for distribution to creditors.

Section 1125(b) of the Bankruptcy Code states as follows:

An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder

of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

"Adequate information" is defined in § 1125(a)(1) of the Bankruptcy Code to mean

information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan.

Case law under § 1125 of the Bankruptcy Code has produced a list of factors disclosure of which may be mandatory, under the facts and circumstances of a particular case, to meet the statutory requirement of adequate information. Disclosure of all factors is not necessary in every case. Conversely, the list is not exhaustive, and a case may arise in which disclosure of all these enumerated factors is still not sufficient to provide adequate information for the creditors to evaluate the plan. Nevertheless, these factors provide a useful starting point for the Court's analysis of the adequacy of the disclosure statement. The Court will address the Committee's objections with an eye toward these enumerated factors as they pertain to this debtor's business and the proposed Chapter 11 plan of reorganization.

Factors (1) through (11) are taken from the case of *In re A.C. Williams Co.,* 25 B.R. 173 (Bkrtcy.N.D.Ohio 1982). Factors (12) through (13) and (14) through (15) appear in *In re William F. Gable Co.,* 10 B.R. 248 (Bkrtcy.N.D.W.Va.1981), and *In re Adana Mortg. Bankers, Inc.,* 14 B.R. 29 (Bkrtcy.N.D.Ga.1981), respectively. This Court adds factors (16) through (19) in response to objections raised in the instant proceeding.

■ Relevant factors for evaluating the adequacy of a disclosure statement may include: (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

The debtor has quoted from this Court's opinion in *In re Brandon Mill Farms, Ltd.,* 37 B.R. 190 (Bkrtcy.N.D.Ga.1984), in defense of the adequacy of the disclosure statement. In *In re Brandon Mill Farms, Ltd.,* 37 B.R. at 192, this Court stated that "[t]he disclosure statement is not intended to be a general discourse in black letter law." The debtor gives that passage sweeping significance which was not intended by the Court.

*Brandon Mill Farms* involved a Chapter 11 liquidation plan in which the debtor's principal asset was sold with Court approval, and the plan simply proposed to allocate the proceeds among the various classes of

creditors. A creditor asserted that the disclosure statement should point out the right of any creditor not paid in full to seek redress against the debtor's general partners. The Court rejected the creditor's assertion on the basis that such a disclosure would be tantamount to giving bare legal advice. Because the debtor did not contemplate continued business operations, the viability of the management was not an issue in evaluating the Chapter 11 plan. Moreover, a lawsuit against the general partners was deemed to have no bearing on the distribution under the Chapter 11 plan. The aforestated passage from *Brandon Mill Farms* is only applicable in such a limited context. Otherwise, a statement of "black letter law" which affects, *inter alia,* the creditors' distribution or the feasibility of the plan is not immune from disclosure under *Brandon Mill Farms.* Having presented the legal background, and having made the necessary disclaimer, the Court proceeds to discuss the particulars of the case *sub judice.*

The disclosure statement describes the business of the debtor, Metrocraft Publishing Services, Inc. ("Metrocraft"), in the following terms:

> Metrocraft is a medium size commercial web printing company with its place of business at 1833 Lawrenceville Highway, Decatur, Georgia. Metrocraft offers to its customers a full spectrum of services from composition and typesetting to complete web offset press. These services[,] including camera ready preparations and sheet fed presses, are offered as separate services as well as a completely integrated package.

A separate entity, Metropolitan Advertising Associated ("MAA") was created to act as a sales organization to increase Metrocraft's business and, ultimately, to act as a broker to place business with other printers. The disclosure statement indicates that:

> In January, 1983, MAA supplied all of its business to Metrocraft. By February MAA was brokering some business, and by March MAA was brokering 80% of its business. The combined business of Metrocraft and the MAA brokering brought in some 26 million impressions, or $650,000.00 gross sales for the quarter ending March 31, 1983.

The disclosure statement points out that two experienced printing sales and marketing individuals left MAA during July, 1983 thereby causing a loss in sales momentum. Efforts to regain sales momentum have not been entirely successful. After filing the Chapter 11 petition, Metrocraft has concentrated on cutting variable operating costs, primarily in the area of payroll.

The only claim deemed unimpaired under the plan is the claim held by Stone Mountain Industrial Park, Inc., lessor of Metrocraft's business premises. In general, secured creditors and creditors holding claims under leases with Metrocraft will realize almost full satisfaction of their indebtedness under the plan. The plan does, however, restructure certain contractual payment provisions. The Chapter 11 plan allocates a total of $48,000.00, plus nominal interest, to be distributed to all unsecured claimants. Neither the plan nor the disclosure statement suggests the percentage at which unsecured creditors will be paid under the plan.

■ The Committee legitimately desires more information before an intelligent decision can be rendered as to the acceptability of the Chapter 11 plan. The Court categorizes the Committee's objections according to the criteria set forth above under which such objections arise:

(2) *A Description of the Available Assets and their Value.* The Committee notes that the disclosure statement fails to give the actual or projected realizable value from machinery, fixtures and equipment originally scheduled in the amount of $354,-499.92. The Court agrees that creditors are entitled to such information or an explanation why such information has not been presented.

(7) *The Scheduled Claims.* The Committee raises a number of objections relating to the disclosure of claims. First, the Committee points out that the plan proposes to

pay claims held by Compugraphic Corporation, Rockwell International Corporation and General Electric Credit Corporation, yet these claims are not scheduled. It is imperative that creditors be informed of the nature of these claims, the principal amount due on these claims and the monthly payments specified in the agreements under which these claims arise. Second, the Committee strongly desires to know the amount of unsecured claims so that some calculation can be made as to the percentage at which such claims shall be paid under the proposed pro rata distribution of $48,000.00. The debtor argues that the amount of unsecured claims is subject to the Court's determination of which claims are allowable. In addition, the debtor asserts that certain claims may be offset by preferential transfers. The Court concludes that the debtor cannot avoid all disclosure regarding unsecured claims simply because their exact amount cannot be determined at this time. Some discussion of the nature of unsecured claims, their approximate value and the approximate amount by which such claims may be subject to setoff for settlement purposes shall be disclosed to creditors. Third, the Committee objects that the disclosure statement fails to indicate the sums to be paid to other creditors, both on a monthly basis and in total amount. The Court agrees that disclosure in this regard is necessary to evaluate, *inter alia,* the debtor's cash flow and the amount of money being diverted to creditors which might be available to pay unsecured claims. Fourth, the Chapter 11 plan provides for payment of wage priority claims notwithstanding the fact that no such claims have been scheduled. The debtor argues that no disbursements are intended to be made to priority wage claimants, but that the wage priority provision was included in the plan to assure that the plan complies with the Bankruptcy Code. Rather than force creditors to ponder the discrepancy between the schedule and the plan, a short statement explaining why the wage priority provision is in the plan shall be provided to eliminate any confusion.

(8) *The Estimated Return to Creditors Under a Chapter 7 Liquidation.* The Committee asserts that the disclosure statement should reveal the estimated return to creditors under a Chapter 7 liquidation as an alternative to the Chapter 11 reorganization. The debtor argues that the projected balance sheet shows that the debtor would be insolvent by the amount of $42,500.00 after subtracting from asset value the amount of secured claims, estimated administrative claims and unsecured claims in the reduced amount of $48,000.00. However, as the Committee's first objection illustrates, the debtor has not provided a valuation regarding the machinery and equipment. Absent a valuation of the assets with some factual basis, and absent a concise statement addressing the prospects of a Chapter 7 liquidation, the disclosure statement does not provide adequate information as required by the Bankruptcy Code.

(13) *The Collectibility of Accounts Receivable.* The debtor's Schedules list the amount of accounts receivable at $117,232.16. Related to the question of the value of assets is the question of the collectibility of these accounts receivable. The debtor's accounting records should enable the debtor to offer at least a historical analysis as to the collectibility of the outstanding accounts. Absent such disclosure, the statement of the amount of accounts receivable is nothing but raw data with little significance.

(16) *The Actual or Projected Realizable Value from Recovery of Preferential or Otherwise Voidable Transfers.* The debtor acknowledges that the bankruptcy estate may have claims for preferential transfers, but no light is shed on the nature of these preferential transfers or their approximate amount. Admittedly, the precise amount of such preferential transfers cannot be stated prior to this Court's determination on such claims. Nevertheless, the debtor is not excused from discussing the amount of preferences in approximate terms and setting forth what steps have

been taken toward settling or litigating these claims.

(17) *Litigation Likely to Arise in a Nonbankruptcy Context.* The debtor's Statement of Financial Affairs shows that a lawsuit has been filed against the debtor by Covington News, but the claim of Covington News is not discussed in the disclosure statement or provided for in the Chapter 11 plan. The creditors are entitled to information regarding the claim by Covington News. In addition, there is a possibility that the debtor may have claims against former principals. The debtor shall indicate what progress has been made or is expected to be made in furtherance of these claims.

(18) *Tax Attributes of the Debtor.* The disclosure statement makes no mention of net operating loss carry-overs which would seemingly be available to reduce the debtor's tax liability in the future. The Court will not impose upon the debtor the obligation to render a lengthy analysis of the law under the Internal Revenue Code. But, if such tax attributes are available for the debtor's use, they should be described so that creditors may evaluate the actual after-tax position of the debtor. If such tax attributes are not available to the debtor, a brief explanation of the reasons leading to that conclusion is sufficient.

(19) *The Relationship of the Debtor with Affiliates.* The Committee contends that the disclosure statement does not illuminate the relationship between the debtor and MAA and any potential claims that may exist between the debtor and MAA. Although the debtor makes reference to MAA at page 5 of the disclosure statement, the exact relationship of the two entities is not clearly set forth, and no discussion is made as to potential liability running to and from the entities. The Court concludes that this relationship and the possible claims shall be disclosed.

In accordance with the foregoing, approval of the debtor's disclosure statement shall be and is hereby DENIED. The debtor shall have thirty (30) days to file an amended disclosure statement which conforms with the directives stated herein.

IT IS SO ORDERED.