**In re CARDINAL CONGREGATE I, an Ohio Limited Partnership, Debtor.**

**Bankruptcy No. 2–89–05133.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Sept. 28, 1990.

See also 113 B.R. 371.

Michael R. Szolosi, Guy R. Humphrey, Columbus, Ohio, for James F. Kacsmar & Co., Peoples Banking Co., The Peoples Banking & Trust Co., Peoples Sav. Bank, Guernsey Sav. Bank, First Federal Sav. Bank of Marion, Civic Sav. Bank, and Hobart Federal Sav. & Loan Ass'n.

Kenneth R. Cookson, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for debtor.

Larry J. McClatchey, Emens, Hurd, Kegler & Ritter Co., L.P.A., Columbus, Ohio, Counsel to certain Limited Partners.

Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, Sp. Counsel to the trustee.

Michael Cook, Skadden, Ars, Slate, Meagher & Flom, New York City, Gen. Counsel to the trustee.

Jay Alix, Jay Alix & Associates, Southfield, Mich., Chapter 11 Trustee.

P. Steven Kratseh, Kilpatrick & Cody, Atlanta, Ga., for the Official Committee of Unsecured Creditors of Cardinal Industries of Florida, Inc.

## OPINION AND ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT

BARBARA J. SELLERS, Bankruptcy Judge.

## I. PRELIMINARY CONSIDERATIONS AND JURISDICTIONAL STATEMENT

This matter is before the Court upon the requested approval of an Amended Disclo-

sure Statement (the "Disclosure Statement") filed by Chapter 11 debtor Cardinal Congregate I and upon this Court's independent obligation to find that the Disclosure Statement includes adequate information within the meaning of § 1125 of the Bankruptcy Code. Objections to the Disclosure Statement were filed by Peoples Banking Company, The Peoples Banking & Trust Company, Peoples Savings Bank, Guernsey Savings Bank, First Federal Savings Bank of Marion, Civic Savings Bank and Hobart Federal Savings & Loan Association (collectively, the "Loan Participants") and James F. Kacsmar & Company ("Kacsmar") (collectively referred to as the "Objectors"). The debtor responded to the objections. An evidentiary hearing was held on September 19, 1990, following which the Court took this matter under advisement.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court may hear and determine under 28 U.S.C. § 157(b)(1) and (2)(A). For the reasons stated herein, the Court finds that the Disclosure Statement cannot be approved as presently proposed.

## II. FACTS

The debtor is a syndicated Ohio limited partnership which owns a congregate retirement living facility located in Columbus, Ohio. According to documents filed by the debtor, Cardinal Industries, Inc. ("CII") is the general partner of the debtor with a nine per cent partnership interest in the debtor. The remaining 91 per cent ownership is apportioned among thirty-one individual limited partners.

The debtor was capitalized by limited partner contributions and by a $3,500,000 non-recourse loan from Cardinal Industries Mortgage Company ("CIMC"). CIMC subsequently assigned its rights under that loan to the Loan Participants. The note and security documents relating to the loan were in turn assigned by the Loan Participants to Kacsmar which has acted as the loan servicer. Repayment of the loan is secured by the debtor's single greatest asset, the retirement facility, as well as by the income derived from the operation of such property.

The debtor filed a voluntary Chapter 11 petition on September 13, 1989. On June 29, 1990 the debtor filed this third proposed Disclosure Statement. The first two statements and accompanying plans have been withdrawn.

## III. ISSUES

The issues before the Court are whether the Disclosure Statement should be approved and whether it contains "adequate information" within the meaning of 11 U.S.C. § 1125.

## IV. DISCUSSION

The Objectors have raised numerous objections to the Disclosure Statement. Those objections may be generally classified as relating either to the confirmability of the debtor's Amended Plan of Reorganization or to the quantity and quality of information disclosed.

### A. *Objections Relating to the Confirmability of the Amended Plan.*

Many of the objections raised in the pleadings and at the September 19, 1990 hearing focus on the confirmability of the debtor's Amended Plan of Reorganization. The Objectors assert that the Amended Plan of Reorganization is not confirmable under the requirements of 11 U.S.C. § 1129 and that pursuit of Disclosure Statement approval is a waste of time and resources for all concerned. In particular, the Objectors allege that the Amended Plan of Reorganization cannot be confirmed because it attempts to replace the Loan Participants for Kacsmar as holder of the claims relating to the $3,500,000 mortgage loans; it provides for separate classification and treatment of Kacsmar's unsecured claims; it attempts to credit postpetition cash collateral payments against the debtor's post-confirmation interest obligations in contravention of the terms of a stipulated cash collateral order previously entered by this Court; it for various reasons fails to ade-

quately protect Kacsmar's interest in the property securing Kacsmar's claim; and it is not feasible because it requires the unauthorized use of Kacsmar's cash collateral to pay administrative expenses. The debtor, on the other hand, contends that the Amended Plan of Reorganization is confirmable and that, in any event, those objections are more properly considered by the Court at the confirmation hearing.

▮▮▮ The Court believes that disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible. *In re Monroe Well Service, Inc.,* 80 B.R. 324 (Bankr.E.D.Pa.1987); *In re Pecht,* 57 B.R. 137 (Bankr.E.D.Va.1986); *In re Kehn Ranch, Inc.,* 41 B.R. 832 (Bankr.D.S.D.1984). However, "[s]uch action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected." *Monroe Well Service* at 333 (footnote omitted). Where objections relating to confirmability of a plan of reorganization raise novel or unsettled issues of law, the Court will not look behind the disclosure statement to decide such issues at the hearing on the adequacy of the disclosure statement.

▮▮▮ In this case, the Court finds that the Amended Plan of Reorganization is not so patently nonconfirmable as to bar consideration of the adequacy of the Disclosure Statement. The objections raised as to the confirmability of the Amended Plan of Reorganization may or may not ultimately be found meritorious; however, the Court will not determine such objections and the related issues at this juncture.

B. *Objections Relating to the Quantity and Quality of Disclosure in the Disclosure Statement.*

The Objectors also contend that approval of the Disclosure Statement must be denied because it fails to provide the quantity and quality of information required by 11 U.S.C. § 1125. Before addressing the specific objections advanced by the Objectors

and making some additional findings and observations, the Court will first review the governing legal principles.

1. Governing Legal Principles.

The codal prerequisite to court approval of a disclosure statement is that it contain "adequate information." Specifically, 11 U.S.C. § 1125(b) provides:

An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title [11 USCS §§ 101 et seq.] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing *adequate information.* The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets (emphasis added).

Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" in general terms to mean:

... information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

Congress left vague the standard for evaluating what constitutes adequate information so as to permit a case-by-case determination based on the prevailing facts and circumstances. H.R.Rep. No. 595, 95th Cong., 1st Sess. 225, 409 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 121 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. While providing for judicial flexibility, Congress intended· that the courts should consider as part of their determination the cost of preparing a more detailed disclosure statement, the nature and history of the

debtor, the condition of the debtor's records, the need for expediency in the solicitation and confirmation process, and the necessity for protection of the reorganization constituencies. H.R.Rep.. No. 595, 95th Cong., 1st Sess. at 409.

■ Numerous courts have prescribed a list of disclosures which typically should be included in a disclosure statement. *In re Dakota Rail, Inc.*, 104 B.R. 138 (Bankr.D. Minn.1989); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168 (Bankr.S.D.Ohio 1988); *In re S.E.T. Income Properties, III*, 83 B.R. 791 (Bankr.N.D.Okla.1988); *In re Jeppson*, 66 B.R. 269 (Bankr.D.Utah 1986); *In re Metrocraft Publishing Servs., Inc.*, 39 B.R. 567 (Bankr.N.D.Ga.1984); *In re Malek*, 35 B.R. 443 (Bankr.E.D.Mich.1983). In *Scioto Valley*, the court adopted a 19–point nonexhaustive list of the types of information that may be required in a disclosure statement. That list of disclosures is as follows:

1. The circumstances that gave rise to the filing of the bankruptcy petition;

2. A complete description of the available assets and their value;

3. The anticipated future of the debtor;

4. The source of the information provided in the disclosure statement;

5. A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

6. The condition and performance of the debtor while in Chapter 11;

7. Information regarding claims against the estate;

8. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

9. The accounting and valuation methods used to produce the financial information in the disclosure statement;

10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

11. A summary of the plan of reorganization;

12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

13. The collectibility of any accounts receivable;

14. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

15. Information relevant to the risks being taken by the creditors and interest holders;

16. The actual or projected value that can be obtained from avoidable transfers;

17. The existence, likelihood and possible success of non-bankruptcy litigation;

18. The tax consequences of the plan; and

19. The relationship of the debtor with affiliates.

88 B.R. at 170, 171.

This Court finds the *Scioto Valley* list to be a helpful guidepost in its analysis and adopts the list as well. The Court cautions, however, that the list is but a yardstick against which the adequacy of disclosure may be measured; the precise information required will be governed by the facts and circumstances presented in each case. As the *Scioto Valley* court noted, disclosure of the listed information may be insufficient or excessive in the context of any given case. 88 B.R. at 168.

■ Generally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization. *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr.D.Colo.1981). A disclosure statement should likewise contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization. *In re Adana Mortgage Bankers, Inc.*, 14 B.R. 29, 31 (Bankr.N.D.Ga.1981). The disclo-

sure statement, on the other hand, should not be burdened with "overly technical and extremely numerous additions," where such information would serve only to diminish the understanding of a typical creditor or interest holder. *Scioto Valley* at 171; *In re Waterville Timeshare Group,* 67 B.R. 412, 413 (Bankr.D.N.H.1986).

2. Evaluation of The Objections in Light of the Legal Requirements.

A number of the disclosure objections advanced by the Objectors were resolved at the September 19, 1990 hearing either by amendments agreed to by the debtor or by oral rulings of the Court. Discussed below are those objections that were not so resolved.

a. *"Cardinal Management."*

 The Objectors oppose the Disclosure Statement's use of the term "Cardinal Management" because management responsibilities for the retirement facility and the assets of Cardinal Retirement Management, Inc. have been transferred to Baker–Royce Properties, Inc. The debtor responds that such use is clear and precise, given that the term "Cardinal Management" is defined in the Amended Plan of Reorganization to include Baker–Royce Properties, Inc., as the assignee of Cardinal Retirement Management Group, Inc.

Although this objection, considered alone, is a minor one, the Court finds the Disclosure Statement's repeated use of terms defined only in the Amended Plan of Reorganization to be needlessly confusing. Accordingly, this objection is well taken. One purpose for the Disclosure Statement is to explain the provisions of the plan to each party in interest in the case. The use of terms of art which are defined only in the plan is, therefore, generally inappropriate.

b. *Employee Claims.*

 The Objectors have objected to a reference in the Disclosure Statement to claims of employees totalling approximately $3,071.00 which may be asserted against the debtor. The basis for the objection is that no such employee claims have been scheduled nor have proofs asserting such

claims been filed. Testimony given at the hearing on the Disclosure Statement indicates that the debtor has known of these employee claims for some time now, yet has failed to amend its schedules to specifically identify the holders and amounts of such claims.

Perhaps a bit of "hide the ball" is going on here. But regardless of the debtor's reasons for failing to amend its schedules, a disclosure statement is not accurate that discusses a class of employee claims that have neither been asserted by proofs of claim nor scheduled.

c. *"Effective Date."*

 The Objectors have also asserted that the Disclosure Statement fails to clearly advise creditors and interest holders of the risks and consequences associated with a possible delay in the "Effective Date" of the Amended Plan of Reorganization because of an appeal or some other circumstance. While the Court does not believe the Disclosure Statement must advise readers of every possible legal consequence which might result from another party's actions, the Disclosure Statement must clearly advise parties what the Effective Date will be without using a term defined only in the plan. Such explanation would have to address the potential for postponement of the payment schedule proposed in the Amended Plan of Reorganization which might be occasioned if an order of confirmation is appealed.

3. Additional Findings and Observations.

 Having independently reviewed the Disclosure Statement, the Court advised the debtor at the September 19, 1990 hearing of additional corrections and information which should be included in the Disclosure Statement. Although the technical corrections required by the Court will not be fully discussed herein, the Court notes generally the manifest importance of making a Disclosure Statement's contents as accurate and consistent as possible. Where inaccuracies are so numerous or significant that creditors or interest hold-

ers can no longer make an informed judgment about whether to accept or reject the proposed plan of reorganization, approval of the Disclosure Statement must be denied.

The Court finds that the Disclosure Statement lacks certain necessary information. First, the Disclosure Statement contains an inadequate discussion of the claims held by various affiliates of CII for loans made and services provided to the debtor. The Disclosure Statement should contain more detailed information regarding the nature of these claims and should specifically identify the holders of such claims. Additionally, a more complete discussion of the Amended Plan's proposed treatment of these claims is necessary.

Second, the Disclosure Statement must contain more information regarding the debtor's operations postpetition. It is not enough that the Disclosure Statement refers its reader to the monthly operating reports filed by the debtor with this Court; the Disclosure Statement should contain a detailed textual description of the debtor's postpetition performance. Likewise, the Disclosure Statement should more completely disclose the terms of the debtor's arrangement with the Objectors for the debtor's postpetition use of cash collateral and the debtor's performance under such arrangement.

Third, the Disclosure Statement should include a discussion of the anticipated future of the debtor's business. Merely attaching *pro forma* income calculations to the Disclosure Statement is insufficient. A more detailed analysis of the projected income, expenses, and surplus funds available for satisfaction of claims and interest is appropriate. Further, the Disclosure Statement should clearly identify all assumptions made in calculating *pro forma* information and should set forth those facts supporting all estimates. Information regarding the accounting and valuation methods used in preparation of the Disclosure Statement's financial exhibits must also be included.

Fourth, both the Disclosure Statement and Amended Plan of Reorganization identify "Net Cash Flow" as a source of funds for the satisfaction of allowed claims and interests. However, the Court can find no definition of Net Cash Flow in either document. The Disclosure Statement must clearly state how Net Cash Flow is defined and calculated.

Fifth, the Disclosure Statement and Amended Plan of Reorganization discuss as a potential source of funds those proceeds that will be realized upon the contemplated sale or refinancing of the retirement facility. The Disclosure Statement should more fully explain the consequences of any such sale or refinancing upon all allowed claims and interests. Additionally, the Disclosure Statement should contain a discussion of any efforts to date, as well as intended future efforts, to bring about a sale or refinancing of the property.

Sixth, the Disclosure Statement should provide a more detailed estimation of allowable administrative expenses. This should include, without limitation, all estimated fees for attorneys and accountants.

Finally, an identification and discussion of all causes of action which the debtor may pursue under the Bankruptcy Code or other applicable law should be included in the Disclosure Statement. The debtor's intentions as to these causes of action must also be disclosed.

The information required by the Court is neither unreasonable nor voluminous. Where, as here, the satisfaction of claims and interests is dependent upon the debtor's ability to improve its financial performance or to consummate contemplated transactions, it is not overly demanding for the Court to require detailed disclosure of the facts and assumptions underlying the debtor's belief that it will accomplish its reorganization effort.

## V. CONCLUSION

Based upon the foregoing, approval of the Disclosure Statement, as proposed, is denied. The debtor is given twenty (20) days to file an amended disclosure statement which supplements the current state-

ment to accommodate the Court's concerns. If such amended Disclosure Statement is adequate, no further hearings will be necessary. If an amended Disclosure Statement is not timely filed or is inadequate, the Court will take further action.

 This Court also reminds the debtor that any proposed Disclosure Statement which is filed must be accompanied by a proposed "draft" ballot in accordance with L.B.R. 3.16.

IT IS SO ORDERED.