## In re UNITED STATES BRASS CORPORATION, Debtor.

**Bankruptcy No. 94–40823.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

April 8, 1996.

John Gellene, Milbank, Tweed, Hadley & McCloy, New York City, for U.S. Brass.

Pat Neligan, Neligan & Averch, Dallas, Texas, for Unsecured Creditor's Committee.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

COMES NOW before the Court for consideration Debtor's Second Amended Disclosure Statement and the Disclosure Statement filed by the Official Polybutylene Claimant's Committee (the "PB Committee"). Debtor and the PB Committee also have competing Plans on file. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed.R.Bankr. Proc. 7052 and disposes of all issues before the Court.

After reviewing both disclosure statements and the related objections, the Court believes it is clear that the various objections are based on the objecting parties' preference for one plan over the other rather than any real deficiencies in the disclosure statements. However, such preference is not a proper basis for denying approval of either disclosure statement. The Court feels that the disclosure statements provide the creditors with adequate information about the respective plans. Consequently both disclosure statements should be distributed to creditors and the creditors should be allowed to vote on which plan they prefer.

## I. Debtor's Disclosure Statement

Debtor's have filed their Second Amended Disclosure Statement ("Disclosure Statement") with respect to the Second Amended Plan of Reorganization proposed by United States Brass Corporation, Eljer Industries, Inc. ("EII"), and Eljer Manufacturing, Inc. ("EMI"), (collectively "Proponents"). Objections to the Debtor's Disclosure Statement have been filed by the PB Committee, Household International, Inc. ("Household"), E.I. Du Pont De Nemours Co., Inc. ("Du Pont"), and certain other creditors (collectively "Objectors"). The objections fall into two major categories: 1) Debtor's Plan is nonconfirmable as a matter of law and 2) informational objections.

### A. Debtor's Plan

Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible. *In re Cardinal Congregate I,* 121 B.R. 760, 764 (Bkrtcy. S.D.Ohio 1990). However, such action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected. *Id.*

### 1) Third Party Release

This Court disapproved Debtor's Original Disclosure Statement based on a finding that Debtor's Original Plan was nonconfirmable on its face. Debtor's Original Plan provided for a permanent injunction to be issued by this Court to prevent any Plumbing Claims from being asserted against EII, EMI, or Shell. The Proponent's argued that this Court had authority to issue

such an injunction under the *Robins* and *Johns–Manville* cases. This Court found that the claims enjoined in those cases were claims for vicarious liability, based on the debtor's action. See *Menard–Sanford v. Mabey (In re A.H. Robins, Inc.)*, 880 F.2d 694 (4th Cir.1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89 (2nd Cir. 1988), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). In this case, EII, EMI, and Shell have actions against them for direct liability for Plumbing Claims. Shell, for example, produced the resin used in the polybutylene pipe. The Court found that it could not issue such a broad injunction protecting EII, EMI, and Shell. Consequently, the Original Plan was nonconfirmable on its face and the Original Disclosure Statement was disapproved.

The Second Amended Plan contains a similar provision for an injunction protecting EII, EMI, and Shell. § 16.13(c) provides for an injunction preventing any Plumbing Claim from being asserted against the Debtor, EII, EMI, or any other Settling Party. Settling Party is defined to include EII, EMI, and Shell if the Court approves the compromise and settlement agreements in § 14.1 and § 14.2.

§ 14.1 provides for the mutual release of all causes of action including contribution and indemnity among the Debtor, the Plumbing Claims Trust, EII, and EMI.

§ 14.2 provides that in exchange for a contribution by Shell of up to $200 million, with numerous conditions, there will be a mutual release of all causes of action including contribution and indemnity among the Debtor, the Plumbing Claims Trust, EII, EMI, Shell, and any Additional Settling Party. This section further provides that if the Court does not approve the compromise and settlement as to any party the release shall not be granted to that party, the party shall not be protected by the injunction, and the party shall not be obligated to make the contributions.

The Objectors assert that these provisions are substantially similar to the provisions in the Original Plan, thus making the Plan nonconfirmable on its face because it provides for an impermissible third party release.

The Court cannot find that the Plan is nonconfirmable on its face. The important difference in the amended plan is that the Plan provides that if the compromise and settlement is not approved, Shell will not contribute the $200 million and will not be protected by the objectionable injunction. The Disclosure Statement explains this possibility. However, the Plan may still be confirmable without the compromise and settlement and accompanying injunction.

Objectors further assert that no creditor can make an informed decision about whether to accept the Plan because it will never know, prior to confirmation of the Plan, what assets will be available to satisfy its claims, and will have no knowledge of its ultimate rights against Eljer or any other Settling Party.

It is true that there are several possible applications of the Plan depending upon the Court's ruling on the proposed compromise and settlement agreements. The various possibilities will certainly affect the funding of the Plan and the Plumbing Claims' rights against the Settling Parties. However, the Disclosure Statement fully explains what the various applications of the Plan are, depending on the Court's ruling.

■ The purpose of the disclosure statement is not to assure acceptance or rejection of a plan, but to provide enough information to interested persons so they may make an informed choice between two alternatives. *In re Stanley Hotel, Inc.*, 13 B.R. 926, 930 (Bkrtcy.D.Colo.1981). It has been held that a disclosure statement's internal inconsistencies should not necessarily bar its approval and may simply illustrate to readers of the disclosure statement why they should not vote for the plan as proposed. *Id.*

■ The same must be said for alleged illegalities in the plan. There is nothing in the Code which indicates a duty on the part of a plan proponent to foresage the Court's rulings upon the plan. *Id.*

■ Likewise, this Court believes that a disclosure statement that reveals several al-

ternative applications of the accompanying plan, does not necessarily require disapproval. It may indicate to the reader of the disclosure statement why they should or should not vote for the plan as proposed.

## 2) *Absolute Priority Rule*

■ The Objectors further assert that the Plan is nonconfirmable on its face because it violates the absolute priority rule.

§ 8.7 provides that in the event that the Court decides that the Plan does not meet the requirements of § 1129 of the Code if EMI retains 100% ownership of Brass, then the stock will be transferred to the Plumbing Claims Trust to be sold by the Trustee 120 days after the effective date of the Plan. If the Court determines that the requirements of § 1129 of the Code are met with EMI retaining 100% ownership, EMI will retain its equity interest and no stock will be transferred or sold.

There has been no determination whether the Plumbing Claims will actually be paid in full. Consequently, the Court cannot determine whether there is an absolute priority rule violation under § 1129(b).

In the event there were an absolute priority rule problem, the terms of the plan attempt to cure the problem by transferring the stock to the Plumbing Claims Trust and selling it. The Objectors maintain that the Plan allows for de facto retention of equity because other potential buyers may not be able to obtain funding in a 120 day period. That is not to be determined at this point. The Court cannot find that the Plan is nonconfirmable on its face because it violates the absolute priority rule.

In summary, the Court will not disapprove the Disclosure Statement based on a finding that the accompanying Plan cannot be confirmed as a matter of law. The Court is making no finding as to the validity of the Plan sections previously discussed. There has simply been no showing that the Plan cannot be confirmed as a matter of law.

### B. *Informational Objections*

§ 1125(b) of the Bankruptcy Code states as follows:

An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

"Adequate information" is defined in § 1125(a)(1) of the Bankruptcy Code to mean information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

■ Case law under § 1125 of the Bankruptcy Code has produced a list of factors disclosure of which may be necessary to meet the statutory requirement of adequate information. The relevant factors for evaluating the adequacy of a disclosure statement may include: (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under

the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with the affiliates. *In re Metrocraft Pub. Services, Inc.,* 39 B.R. 567, 568 (Bkrtcy.N.D.Ga.1984). Disclosure of all factors is not necessary in every case. *Id.*

The Court believes that the Proponents have adequately disclosed all relevant factors in their Disclosure Statement. However, the Objectors have raised several informational objections. The Court will only discuss the most substantive of these objections.

### 1). *Shell's Contributions*

■ The Objectors assert that the contingencies to Shell's contribution to the Plumbing Claims Trust are not adequately disclosed. Consequently, according to the Objectors, creditors will be unable to properly evaluate the amount and value of the Shell contribution under the Second Amended Plan.

Shell's contribution to the Plumbing Claims Trust is subject to many contingencies. However, each of these contingencies is set out in the Disclosure Statement.

For and in consideration of the releases and the injunction to otherwise be provided Shell if the Shell Settlement is approved, Shell shall contribute $200,000,000, or such lesser amount as shall be necessary to effect the payment in full of all Allowed Plumbing Claims, to the Plumbing Claims Trust subject to certain limitations. (Disclosure Statement p. 84).

As a condition precedent to Shell being a Settling Party (which may be waived by Shell in its sole discretion), Shell shall have obtained an opinion of its counsel that each dollar paid by Shell to the Plumbing Claims Trust shall reduce by an equal amount any obligation to pay its *pro rata* share of any funds it is obligated to pay under its commitments under the Plumbing Claims Class Action Settlement Agreement, if applicable, or to the Plumbing Claims Group, Inc. (the "PCG"). *Id.*

Any amounts paid by Shell on or after the Effective Date on account of a Plumbing Claim under the PCCA Settlement Agreement or in any substantially similar settlement agreement or to the PCG shall reduce any obligation to contribute funds to the Plumbing Claims Trust by an amount which would have been allowed to such holder as if such holder's Allowed Plumbing Claim was liquidated and satisfied by the Plumbing Claims Trust. (Disclosure Statement p. 85).

The Disclosure Statement further discloses in bold print that if the Shell Settlement is not approved by the Bankruptcy Court (i) the releases to be granted by and provided to Shell shall not be granted or provided, (ii) Shell shall not be protected by the injunctions provided pursuant to Section 16.13 of the Plan, and (iii) Shell shall be under no obligation to make contributions contemplated by Section 7.4 of the Plan. (Disclosure Statement p. 102).

The Court believes that the Disclosure Statement makes it clear to any creditor reading the statement that Shell's contribution to the Trust may be reduced to something less than $200 million, possibly even reduced to nothing, if (1) Shell does not receive approval from its counsel, (2) Shell is required to contribute to a class action settlement fund, or (3) the Court does not approve the Shell settlement.

Again, the Court does not believe such contingencies render the Disclosure Statement nonapprovable, as long as they are fully disclosed. They may simply indicate to creditors how to vote on the Plan.

### 2). *Eljer's Contribution*

The Proponents disclose at pages 83–84 of the Disclosure Statement that Eljer will contribute (i) its rights under the insurance coverage and any insurance settlement agreements (ii) a percentage recovery, if any, on its claims against Household and (iii) its claims for contribution and indemnity with respect to Plumbing Claims against any party other than the Debtor and other Settling Parties in consideration for the release of the Debtor's claims against Eljer and an injunction benefitting Eljer against Plumbing Claims.

The Objectors claim that such disclosure is insufficient because the Disclosure Statement provides an inadequate valuation of the insurance coverage and the claims against Household.

The Disclosure Statement at pages 31–35 contains a detailed description of the insurance coverage and related insurance litigation. The Disclosure statement makes clear that the policies are comprehensive general liability policies which were issued for the benefit of US Brass, EII, EMI, and one or more of their predecessors, for the period 1979 through 1991. Thus, Eljer is a co-insured with the Debtor under the Polices; as a result, Eljer's contribution does not provide additional coverage to the Trust but merely prevents Eljer from reducing coverage available to the Debtor.

The Disclosure Statement also makes it clear that the extent of insurance coverage is highly contested and may be substantially less than the listed face amount of the policies. It is further noted that coverage for the years 1987 and thereafter is very limited. The Court believes that creditors are provided with an adequate description of the value of insurance coverage and related litigation.

The Disclosure Statement at pages 36–37 describes the Household litigation. The Disclosure Statement describes generally the claims and causes of action asserted by Eljer in the Household litigation.

■ The Objectors' main complaint is that the Disclosure Statement does not place a dollar amount on the value of the Household litigation. The Household Litigation involves complex factual and legal issues. The Proponents have stated in the Disclosure Statement that they are presently unable to provide any valuation estimate with respect to such claims given the factual and legal complexity of such potential claims.

The Court does not believe the Proponents should be required to speculate about such value. It is sufficient that they describe the litigation and disclose that they are unable to estimate the value.

### 3). *The Plumbing Claims*

■ The Objectors assert that the Proponents' description of the Plumbing Claims and the PB Litigation is misleading and incomplete. The Objectors note that the Proponents only discuss Quest II failures and do not discuss the Quest I system. The Objectors further argue that the Proponents disagree with the estimate of Plumbing Claims but have failed to disclose a basis for that disagreement.

The Disclosure Statement at page 27 makes clear that all claims asserted to date have related to the Quest II System. Thus, the Proponents believe that Quest II claims are the appropriate basis for valuing Plumbing Claims.

The Disclosure Statement at pages 74–80 provides a detailed discussion of the Plumbing Claims. The Proponents discuss the PB Committees estimates of Plumbing Claims. The Proponents state that they do not agree with the PB Committees estimates because the Proponents do not believe it is appropriate to assume that all systems will fail. The Proponents discuss their preliminary analysis and give a preliminary estimate of Plumbing Claims of $200,000,000 and $500,000,000. The Disclosure Statement makes clear that the Proponents have not completed their analysis of the Plumbing Claims, the estimated value provided is preliminary and is subject to change.

The Court believes that the Disclosure Statement makes it clear that the Proponents and the Objectors have diametrically opposed viewpoints on the value of the Plumbing Claims. It is further clear that no one can accurately predict the value of the Plumbing Claims at this point. Thus, it is sufficient that the Disclosure Statement makes creditors aware of the two different viewpoints.

The Court believes that Debtor's Disclosure Statement provides creditors with adequate information to make an informed judgment about Debtor's Plan. It is therefore

ORDERED that the Disclosure Statement is hereby APPROVED.

## II. *PB Committee's Disclosure Statement*

The PB Committee has filed its Proposed Disclosure Statement ("Disclosure Statement") Pursuant to Section 1125 of the United States Bankruptcy Code Accompanying the Plan of Reorganization for United States Brass Corporation Prepared by the Official Polybutylene Claimants Committee. Objections to the PB Committee's Disclosure Statement have been filed by Brass, Eljer, Shell, Hoechst Celanese, and Household, as well as certain other parties (collectively "Objectors").

§ 1125(b) of the Bankruptcy Code states as follows:

An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

"Adequate information" is defined in § 1125(a)(1) of the Bankruptcy Code to mean information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

Case law under § 1125 of the Bankruptcy Code has produced a list of factors disclosure of which may be necessary to meet the statutory requirement of adequate information. The relevant factors for evaluating the adequacy of a disclosure statement may include: (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclo-sure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with the affiliates. *In re Metrocraft Pub. Services, Inc.,* 39 B.R. 567, 568 (Bkrtcy.N.D.Ga.1984). Disclosure of all factors is not necessary in every case. *Id.*

The Court believes that the PB Committee has adequately disclosed all relevant factors in their Disclosure Statement. However, the Objectors have raised several objections. The Court will only discuss the most substantive of these objections.

### A. *Bad Faith*

The Objector's contend that the PB Committee has filed its Plan in bad faith. The Objectors allege that the PB Committee seeks to transform U.S. Brass and this Chapter 11 case into a litigation vehicle to assist the members of the PB Committee in pursuing polybutylene litigation against third parties.

The Objectors maintain that the PB Committee's last minute application to retain statisticians and economists demonstrates that at the time the PB Committee filed its Disclosure Statement, the PB Committee did not have the necessary support for critical portions dealing with polybutylene litigation. The Objectors allege that this application to retain statisticians and economists, therefore, indicates that the Plan was proposed in bad

faith. The Objectors maintain that since the Plan was proposed in bad faith, it cannot be confirmed and, thus, the Disclosure Statement cannot be approved.

Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible. *In re Cardinal Congregate I,* 121 B.R. 760, 764 (Bkrtcy. S.D.Ohio 1990). However, such action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected. *Id.*

■ The Court, upon reviewing the face of the PB Committee's Plan, cannot draw the conclusion that the Plan was proposed in bad faith. Consequently, the Court cannot at this stage determine that the Plan is so fatally flawed that confirmation is impossible. The issue of bad faith, therefore, is more properly addressed at confirmation and is not a basis for denying approval of the Disclosure Statement in this case.

### B. *Feasibility*

The PB Committee's Plan provides for the formation of Newco, a company which is supposed to continue Brass' operations on a stand alone basis independent of Eljer. In the event that the Court determines that Newco cannot operate separately from Eljer, the operating assets of Reorganized Brass will be sold at an auction in accordance with Section 363 of the Bankruptcy Code.

Currently about 13% of Brass' total sales are comprised of sales of faucets to Eljer. The Objectors believe that the PB Committee has failed to explain how Newco will replace the sales formerly attributed to Eljer.

Furthermore, the PB Committee's Plan provides that Newco may phase out the manufacture and sale of polybutylene for plumbing purposes. Sales of polybutylene currently account for roughly 40% of US Brass's net sales.

The Objectors believe that these possible losses of sales make the Plan nonfeasible.

Consequently, the Plan is nonconfirmable on its face and the Disclosure Statement should not be approved.

The Disclosure Statement at pages 63–64 discusses the risks to Newco, if the sales to Eljer cannot be replaced by sales to other customers. It also discusses the risks to Newco if the sales of polybutylene cannot be replaced by sales of other products. If these sales are not replaced, it may significantly impact the ability of Newco to operate on a stand alone basis.

■ The Court cannot conclude, after reviewing the PB Committee's Plan, that the Plan is so fatally flawed that it cannot be confirmed. The Court cannot determine, from the face of the document that Newco will be unable operate profitably independent of Eljer. Furthermore, should the Court determine that Newco is unable to operate profitably independent of Eljer, the Plan provides for the Sale of Brass's operating assets. Therefore, feasibility issues are best determined at confirmation.

### C. *PB Claims*

The largest bone of contention between the Objectors and the PB Committee appears to be the valuation of the PB Claims and the PB litigation.

The PB Committee has taken the position that all Quest systems will fail and has provided estimates of Brass's potential liability based on this assumption.

The Objectors do not agree that each installation of a Quest system will give rise to a PB Claim. The Objectors do not believe that the PB Claims filed to date and the current PB litigation support the PB Committee's valuation of the PB Claims. The Objectors maintain that there have been few PB Claims asserted relating to the installation of the Quest I systems. Substantially all PB Claims asserted to date have arisen from the installation of the Quest II systems. Consequently, the Objectors feel that the PB Committee's estimates of PB Claims are unsupported. Accordingly, the Disclosure Statement should be disapproved because it

provides creditors with faulty or inadequate information.

■■■ The Disclosure Statement at pages 53–56 discusses the valuation of the PB Claims. The Disclosure Statement makes it clear that the Debtor disputes that each installation of a Quest System will give rise to a PB Claim. Consequently, the Debtor's estimated values of PB Claims are much lower than those of the PB Committee.

The Court believes that the Disclosure Statement makes it clear that the PB Committee and the Objectors have diametrically opposed viewpoints on the value of the PB Claims. It is further clear that no one can accurately predict the value of the PB Claims at this point. Thus, it is sufficient that the Disclosure Statement makes creditors aware of the two different viewpoints.

The Court believes that the PB Committee's Disclosure Statement provides creditors with adequate information to make an informed judgment about the PB Committee's Plan. It is therefore

ORDERED that the Disclosure Statement is hereby APPROVED.

The Court has determined that it is necessary for all parties to be fully aware of the existence of two disclosure statements and proposed plans of reorganization. Accordingly, the following notice shall be prominently displayed on a cover sheet bearing the caption of this case to be transmitted with each disclosure statement, ballot and proposed plan:

### NOTICE

THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF TEXAS HAS APPROVED TWO DISCLOSURE STATEMENTS IN THIS CASE. BOTH THE DEBTOR AND THE POLYBUTYLENE CLAIMANT'S COMMITTEE HAVE FILED DISCLOSURE STATEMENTS AND PROPOSED PLANS OF REORGANIZATION. THERE ARE IMPORTANT DIFFERENCES BETWEEN THESE PLANS WHICH ALL CREDITORS MAY WISH TO CONSIDER BEFORE VOTING.

The parties are instructed to file with the Court proposed orders approving the Disclosure Statements and containing the appropriate blanks for the Court to fill-in deadlines for voting, objecting to plans and hearings on confirmations of plans. The judgment is to comply with official form 13. Upon receipt of these proposed judgments, the Court will set a status conference with the plan proponents to determine the schedule for mailing out ballots, disclosure statements and plans.